Good morning. My name is Ben Lechman. I represent Mr. Suarez. And I'd request to reserve about five minutes of rebuttal. Sure. Just keep an eye on the clock there. Okay. One hundred years of precedent. That was a favorite phrase of one of my professors in law school. He was citing back to a case where the losing party in the case had a hundred years of precedent on their side. And all throughout the year that I had in my first year of law school, whenever there was a case where someone had a precedent, he would say, a hundred years of precedent. A hundred years of precedent. And the reason why the person with a hundred years of precedent lost was just very simple. Fairness. Fairness. That's all this case is about. It's about fairness. This case boiled down to its bare essentials. It's about a habeas petitioner who had three claims. He properly exhausted those claims in state court. He then brought them in federal court preadapted in 1995. Those claims are properly before the court. At a minimum, it's my contention that those claims should be heard today under a relation-backed doctrine. In addition, I think as we stand here today under this Court's recent decision in Felix v. Male, I think the — all the other claims that he has could potentially be heard as well. And obviously, I think I'll get to that in a few minutes, but Felix v. Male may be of dubious longevity because the Supreme Court's — Right. It's granted cert, right? Granted cert. And even if that's true, what I would point this Court's attention to is I think Judge Tolman's dissent, where he advocates for the rule that's, I want to say, the Eleventh Circuit's Davenport case. And that rule is just a less expansive interpretation of the scope of Rule 15, where rather than looking at the trial and the entire criminal proceeding below as the same proceeding, simply looking at the actual legal claim. To that extent, the three claims that are raised, improperly exhausted, and filed before a deputant, Mr. Suarez's petition, are once again brought to the Court in 2000 in his later petition. So those should relate back. So let's — Right. So he filed his petition, his fully exhausted petition, before AEDPA came into — was adopted and became effective. But then in — on June 4, 1996, he filed a request with the district court to withdraw — he titled it Motion to Withdraw a Petition. That's right. And he's pretty clear. Petitioner's requesting it be withdrawn without prejudice as he intends to pursue issues unresolved and unexhausted in the state court. Right. And I have two possible explanations for that. Okay. Now, as a district court judge, you know, down the — it takes a little while, but, you know, it takes a few months, I believe it is. And eventually the district court dismisses it. Dismisses the petition. Without prejudice. I agree. And so — And I assume the Court's argument is, well, doesn't that end the matter because his next petition is not filed? And my answer is — For years later. I agree. Well — Federal petition. Agreed. In 2000. Several years later. In the interim, he is making good-faith efforts to exhaust. And I'll get to that in just a moment. But the point I want to make is that dismissal, I think, still left the district court with some jurisdiction. And the Court may be saying, well, how can that be? A moment ago, Your Honor had just alluded to when the Supreme Court makes a broad suggestion, this Court needs to look to at least its prior precedent interpreting that suggestion in the specifics to determine what the Supreme Court meant. The Supreme Court in two cases, one of them is Castro and the other one is Duncan v. Walker, said that in the post-debate world, when there was a statute of limitations coming into effect, that when these pro se petitioners were looking to dismiss and exhaust, what the Court should do is be very careful in just dismissing outright when that dismissal might lead people to be kicked out of court. What the Court should do is retain jurisdiction in some way, treat the second petition as an amendment. This Court has actually done that. And there's a case I looked at yesterday, and it is called Anthony v. Canberra. It's at 236F3-568. Roberts. Is that in your brief? No, it's not. And I'm sorry. I wish I had read it. Before you leave, just give the clerk a piece of paper. I will do that. With the case site on it. In that case, what happened is this. Two days before the ADEPA statute of limitations passed or was about to run, a pro se petitioner gave his petition to authorities, filed it. It had one exhausted claim and about five unexhausted claims. He realized that he needed to exhaust either claim, so he asked for a dismissal without prejudice, which was granted. He then refiled the one unexhausted claim in June, after the statute of limitations had clearly passed, and he asked that that petition be filed and that he be given a stay and abate. The district court said, all right. The government said, how can that be? This is time barred. You can't do that. The district court, this court, found that that was fine. In fact, it found under equitable principles that the district court should have done that based on the same reasoning from Castro and Duncan v. Walker, because otherwise this person would be left out of court. What about the fact here that the court told him specifically you've got a year, reminded him of the Antiterrorism Act and said you've got a year to take action? I think there's two responses to that. One is that this is the Supreme Court is telling courts to be careful, and it should have construed it as a stay and abate type of situation. Two is the last section, that footnote, if you'll notice, the court says, well, you know, it cites, I think, 2244d or whatever the statute of limitation provision is for the tolling provision for when you have a State petition pending. And I think it's a little confusing, at least for a pro se petitioner. We as lawyers and judges, I think, sometimes kind of scratch our heads over this And I think that's a great thing that he did that. I think it's a little confusing maybe for a pro se petitioner. But the bottom line is I think it's still because all the claims that were raised in his first petition were exhaustive claims. I know there's three cases that are sort of bad for Mr. Suarez and the Ninth Circuit.   I think he was also receiving some bad advice. I think it's where they say, this Court has said, if you are dismissed without prejudice for failure to exhaust, then your next petition cannot really relate back. And those cases are all factually distinguishable for, I think, some pretty compelling reasons. But the main point about those cases are, take that rule at face value. It says when your claims are dismissed for failure to exhaust, then you cannot, your later petition cannot relate back.  He had three claims, they were exhaustive, and he brought them to court. Now, at a minimum, those three claims But you're suggesting, what you're suggesting, though, is that the district court judge should have treated his request As a stay in abeyance Not as a request to withdraw or a request to dismiss, but as a request to stay and hold the case in abeyance while he goes off and attempts to exhaust Claims that are not even alleged in the petition, but are new claims Right. That he needs to exhaust. And the reason I think that this Court should especially confirm that is, one, is Anthony versus Kennedy Why would we do that when he was pretty clear on what he wanted? Because it's so clear what he wanted. He says Because these claims are exhaustive already. They're properly before the Court. As I, you know, the time, we sort of tried to figure out a series of events here. And by the time the district court finally got around to dismissing it, it was, I think, on August 2, 1996. That's correct. And he had then until, let's see, April, what was the date? Of 97, the Devastation Limitations. Right. That would be April of 97. Right. April of 97. And as it turns out, after his case, so he's got quite a bit of time left when he asks for it to be dismissed. He's got several months. Right. And when he leaves the district court, he does go over to the state court. He pretty promptly starts through the state court system with his habeas petition. He exercised, I think, an extreme case of due diligence. The only blip on the radar is when he's moved, I think, in January of 97. He's moved. He loses access to the sort of jailhouse lawyer who was helping him prepare these petitions. And he makes, I think, an ill-advised attempt to order a transfer from the El Centro courthouse. Some of those documents are in the record, in his excerpt of the record. Some are in my supplemental excerpt of the record. I think it's unclear when the date is that he first began. I did talk to the courts in El Centro as late as yesterday, and there is some evidence, and I've shared it with counsel. I know it's late to bring this up, but there's some evidence that he was actually filing those requests as early as January of 97. So he's making his good-faith attempts. I think it's ill-advised. He does get quite a bit of time for statutory tolling because of his efforts to move the case through the state habeas proceedings. And according to our best calculations, with his statutory tolling, the statute was tolled until about September 14, 1997. There are several different ways to count it, and I agree that that's a favorable way to count it. Although favorable in what context? Like I said, I think it's a binary proposition. You're either counted so that you can get into the halls of justice or you can't. And the way the courts count it is obviously it leaves him out. But why? Well, it's actually pretty generous. I mean, well, you're right. The problem, the next thing that then happens is he begins to ask for these, he gets off on this quest to obtain transcripts, which goes on. It goes on until sometime in 99 when he's still trying to get his transcripts. And then he finally files, in December of 99, he files his second habeas petition in the California Superior Court. Right. And I think that there are really only two ways for the district court to be able to hear this 2000 petition. And one is if this Court finds equitable tolling. And based on Your Honor's comments, I see that maybe the Court raises an eyebrow at that claim. But the other way. There's not much in here about equitable tolling. There's no facts. There's no. I guess what we know here is that he was he was transferred from Salinas Valley to Corcoran State Prison. And that he's suggesting that that might have been a problem with. And not being able to receive the transcripts. And I can just tell you from personal experience dealing with the El Centro Courts, maybe not the most expeditious way to get things done. But it's raised in our brief that the statute of limitations should be equitably tolled because of the fact that he's trying to exalt these claims. And he's making good faith efforts to do so. And it's not having these hearing transcripts is an impediment that's not caused by any lack of due diligence on his part. It makes repeated efforts. But he doesn't explain why this is the problem. He just says I'm trying to get the transcript, but he doesn't explain why the lack of the transcripts. Well, I guess because. Thank him for being able to proceed. Well, certainly. But we all know the transcripts are useful. That's why we designate them as directives. The transcripts are useful, but he's got to show why he's got to have them. Well, maybe he's short on that showing. But even if that's the case. Equitable tolling requires a showing. I understand that. Without the transcripts, it's difficult to show what you would have done if you had them, if you could never obtain them in the final instance. The bottom line is his first three claims are exhausted, raised. And I want to go back to what Judge Tallman's dissent said. The reason he chided the majority in the Felix v. May, at least he said, your opinion is based on this notice, and it's a very broad reading of the notice. Under Rule 15, you cite this breach of contract case. But the government's never really put on notice the exact claim. In this case, the government actually filed an answer in the original petition. So they were certainly put on notice. I would point this Court to a case that's in my brief. I think it's Woodford v. Garceau, where this Court held that once a case is actually before the merits of the habeas cases, is on the merits before a district court, that adepa doesn't apply, if it happened pre-adepa. In this case, his case was actually before the court on merits. The government filed a response. The reason why I think he actually, this is just guessing on my part, is that he took this as a course, is because I think the government's response said that you hadn't potentially, you hadn't, he hadn't sufficiently federalized these claims. And he didn't obviously have the benefit of the Supreme Court's recent case, Baldwin v. Reese, where I think these claims are, under the reasoning of that case, they're sufficiently federalized. So that may be why he left, and then he got some bad advice to add some other claims, and he went on this hunt for these transcripts. But the bottom line is fairness. This is a man who had three claims. He's done all he can to exhaust, all he can to follow the law. His first three claims were completely exhausted, filed before the statute of limitations. Under even the most narrow reading of Rule 15, his new petition should relate back to the first one. I understand the Court saying, well, did the Court retain jurisdiction so that that can happen? My answer is yes, under Anthony v. Canberra and under these two Supreme Court cases, Castro and Duncan v. Walker. The cases that say no, that when there's a dismissal without prejudice, this Court's going to say no for a policy reason. They say no because you're dismissed for failure to exhaust. And the policy is you shouldn't be in court in the first place. You didn't exhaust these claims. That's the policy animating those three cases. Besides some very compelling and distinguishing facts, like in Henry v. Lundgren, which is cited by the government, the Petitioner filed two petitions, both pre-Adepa. His second one, he wanted to relate back because he was – Adepa came out later and he couldn't refile a third. But his second one, the Court held, he wasn't even in custody, so the writ wasn't available to him. Adepa is ancillary to the discussion. But the policy reason animating these three cases is that if you've got a claim where you're putting unexhausted – a petition with unexhausted claims in Federal court, you shouldn't be here. You don't have any business here. This is a different case. This is a case about fairness. This is a case about someone whose claims have been exhausted. Those three claims are properly before the Court. All he's asking for is to be heard at a minimum on those three claims. He could have done that originally. He could have said to the district court, just dismiss the unexhausted claims and we'll go forward. There actually were no unexhausted claims. If he had just left those first three, we wouldn't be talking today. It's because of his hunt for these other claims and perhaps his fear that something hadn't been properly exhausted. When he filed the first time, there were some exhausted claims. All. All exhausted. Three claims, all properly exhausted before the California courts. What I would have had to do was say, cut down my petition so I only have exhausted claims, and I'll go forward on those. I think what he should have said was, please stay and obey this. What he said was, please dismiss it. Well, I'm just giving you another option. He had two options. He didn't take either one of them. But he didn't have any unexhausted claims in that first petition. He had three claims. All of them were exhausted. And that's my point, is this rule doesn't apply regarding dismissals of mixed petitions because it simply wasn't a mixed petition to begin with. Doesn't fairness pretty well lie in the eyes of the beholder? Congress has said we think it's fair to have a one-year statute, and others might disagree. Take you back to Marbury v. Madison. It says we're not interpreting the statute here as the Constitution. The Constitutional writ, habeas corpus, should not be abridged. When I meet people at parties and they say, what do you do? Criminal defense attorney. They say, how can you do that? People get off on technicalities. I say, oh, no. Oh, no. People lose on technicalities. The government argues technicalities. I'm here in court arguing the Constitution. They're arguing about technicalities. It should have been this. It should have been that. It's ticky-tack. This is three claims that were exhausted before the Court properly. It's a constitutional matter. Roberts. Stay the rest of your time for the model. Good morning, Your Honor. May it please the Court, Deputy Attorney General Nikki Schafer appearing on behalf of Respondents and Appellees. Yes. Good morning. Good morning. Your Honor, I have sympathy with Mr. Leckman, and I find it quite amusing what he has to say about his explanation for his employment. But, Your Honor, the bottom line is the district court correctly dismissed Mr. Suarez's second Federal habeas petition with prejudice because that petition was clearly untimely. There's no technicalities about it under any view of the applicable law. The petition was untimely. The relation-backed doctrine provided for in the Federal Rules of Civil Procedure is not available to rescue Mr. Suarez from the effects of his lack of diligence. The first Federal habeas petition Mr. Suarez filed in September 1995 was dismissed without prejudice at Mr. Suarez's specific request, as this Court has noted. And again, as the Court noted, the ensuing report and recommendation specifically cautioned Mr. Suarez about the one-year statute of limitations. But despite this warning, the habeas petition, which is the subject of this litigation, was not filed until the year 2000, which was over five years after the first Federal filing. This Court has previously held that the filing of a second habeas petition following the dismissal without prejudice of the first petition does not relate back to the date of the first petition. And that's the Henry v. Lundgren case, Your Honors. That case is controlling here. As in Henry, the district court in this case did not expressly or impliedly maintain jurisdiction over Mr. Suarez's original petition. So also, as in Henry, there was no pending petition to which Mr. Suarez's new filing in the year 2000 could relate back to or amend. In Henry, this Court found that the Federal Rules of Civil Procedure were inapplicable in such circumstances for the relation back doctrine, and the exact same situation exists in this case. Your Honors, this case presents an entirely different scenario than this Court considered in Felix v. Male. As the Court noted, that case is not final as it's pending before the United States Supreme Court. But even if it were viable law at this point in time, it would not be applicable here. In that case, the petitioner never sought to dismiss his pending Federal petition, and so the Court never lost jurisdiction over the matter. Instead, the petitioner in Felix sought to amend his original petition less than one year after it was filed. The case retained the same case number, and only one new claim was added. This Court concluded that the amendment then did relate back to the filing of the original petition, and thus was timely. However, here, the petitioner never sought to amend his original petition. Instead, he voluntarily dismissed the petition and filed an entirely new case with a new case number, which presented many, many new claims after the original action was dismissed at his request. So even if Felix was viable authority, it would not provide support for the petitioner's argument. Your Honors, this case is also not salvageable through an application of the equitable tolling doctrine. None of the alleged circumstances which Mr. Suarez seeks to rely upon are extraordinary or justify an application of this equitable doctrine. Your Honors? What do you understand his factual basis to be for equitable tolling at this point? Well, there seems to be two different claims that Mr. Suarez is making, the primary one being, of course, this quest for these transcripts. And as this Court noted, that quest went on for quite a lengthy period of time. And interestingly, the transcripts he was specifically seeking were the preliminary hearing transcripts, while none of the new claims that were ultimately filed related to anything to do with the preliminary hearing. So as Your Honor correctly pointed out, there has been no showing made that the missing transcripts were necessary to the filing of the new claims. So that's one aspect, Your Honor, of this equitable tolling claim. And the second that was raised in the supplemental opening brief was Mr. Suarez's claim that he lost the assistance of jailhouse lawyers because he was transferred to a new prison, and the man who had been helping him was no longer available. So he then took some number of years until he could find a new inmate to help him. But, of course, there's no law that would support that as a basis for an imposition of equitable tolling. But I think those are the two main things, Your Honor. And neither of them, neither of them under any case law that I am aware of constitute extraordinary circumstances. So, Your Honor, because the relation-back doctrine has been applicable here and no extraordinary circumstances do warrant an application of equitable tolling, the district court's judgment should be affirmed by this Court. And if this Court has any questions, I'll be happy to answer them. Otherwise, I'll submit it. Thank you very much, Your Honors. I appreciate your arguments. Just very briefly, Your Honors. In terms of the government's contention that this is untimely, my first response would be that there's really no prejudice to them. They've already filed their response. I know this Court, I don't have the names of the cases, but has many times allowed issues that have been, and I'm not saying this has been waived, but in a different context, issues that have been waived to be litigated when the government suffers no prejudice by that. It was an issue of pure law. At this juncture, Mr. Suarez had filed his petition. There's a response on file. It's like two teams showing up to the field to play ball, and there's no reason not to let them play. All the judge has to do is rule for Mr. Suarez to stay in court. The Henry v. Lundgren citation is really not appropriate. That's the case that said, well, the Court didn't retain any jurisdiction. The petitioner in that case was out of custody. The case was over. There's no possibility that the habeas root was available to him. Additionally, that was the policy of the same policy that's in the other two cases that he cited by the government of keeping people out of court when they have mixed petitions, where there are unexhausted claims. This is a different factual and legal situation because Mr. Suarez's claims were all properly exhausted. He didn't present a mixed petition, and that's why this case is different. I think fairness dictates that his, at least his three first claims were properly heard, because he wasn't dismissed for failure to exhaust anything. He had done exactly what he needed to do. It was just the foolishness of leaving court to try to do these other things. And I think that this Court's prior decision in Anthony v. Canberra supports this Court acting in an equitable fashion and allowing for that relation-backed doctrine. In fact, in Anthony v. Canberra, this Court said it would have been an error for the Court to dismiss without prejudice, knowing that this person would probably be kicked out of court. So his intent, I think, was pretty clear, that that was all he wanted to do was exhaust some other claims. In fact, since the district court had three properly exhausted claims, they should be heard. Thank you. Thank you so much. I appreciate your argument, counsel. Thank you. The matter is submitted.
judges: Hall, Paez, Beistline